```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ASHLEY CLEMONS,<br>on behalf of herself and all<br>others similarly situated, | 1:18-cv-16883-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| MIDLAND CREDIT MANAGEMENT,<br>INC., | |
| Defendant. | |

**APPEARANCES**:

DANIEL ZEMEL
ZEMEL LAW LLC
1373 BROAD STREET, SUITE 203-C
CLIFTON, NJ 07013

   *On behalf of Plaintiff*

ELLEN BETH SILVERMAN
MATTHEW BLAKE CORWIN
HINSHAW & CULBERTSON LLP
800 THIRD AVENUE
13TH FLOOR
NEW YORK, NY 10022

   *On behalf of Defendant*

**HILLMAN, District Judge**

   This matter concerns claims by Plaintiff, on behalf of herself and other similarly situated parties, against a credit card account servicer for its efforts to collect on Plaintiff's credit card debt. Presently before the Court is the motion of Defendant to compel arbitration of Plaintiff's claims. For the reasons expressed below, Defendant's motion will be granted.

BACKGROUND

Plaintiff, Ashley Clemons, claims that on April 4, 2018, Defendant, Midland Credit Management, Inc. ("MCM"), sent her a letter presenting the "current balance" of $367.01 for a personal credit card issued by Comenity Bank. The collection letter, which is attached as an exhibit to Plaintiff's complaint, provides:



(Docket No. 1-2.)

Plaintiff challenges the clarity of the payment options. Plaintiff claims that Option 3 is ambiguous as to whether this is a third settlement option or a path to full payment. Plaintiff claims that Option 3 on its own appears to be a path to full payment, but after reading the statement that all three are discount options, the consumer would reasonably believe that the item is a discount. Plaintiff claims that this ambiguity is material because it directly affects the consumer's choice to pay the debt.

Based on this letter, Plaintiff alleges that MCM has violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. Plaintiff seeks damages, as well as declaratory and injunctive relief. Plaintiff also seeks to bring a class action comprising of: "All consumers with a New Jersey address that have received the same form letter as Exhibit A from Defendant MCM concerning debts for Comenity Bank used primarily for personal, household, or family purposes within one year prior to the filing of this complaint." (Docket No. 1 at 3.)

MCM has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to compel arbitration pursuant to the arbitration

3

provision in the Account Agreement Plaintiff entered into with Comenity, which MCM argues it may enforce as part of Comenity's assignment of Plaintiff's account to MCM. Plaintiff has opposed MCM's motion, arguing that the motion should be denied because MCM has no standing to enforce a provision in an agreement it was not a party to. Plaintiff further argues that the entire agreement is invalid and unenforceable as a matter of law and equity.

## **DISCUSSION**

### A. **Subject matter jurisdiction**

Plaintiff brings this action for damages and declaratory relief arising from the Defendant's violation of 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

### B. **Standard for Motion to Dismiss and to Compel Arbitration**

The Third Circuit has articulated the standard for a court to apply when assessing a motion to compel arbitration:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court

4

entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations and citations omitted).

Even though Plaintiff's complaint does not attach the agreement that contains the arbitration provision at issue, the Court may consider the agreement and the documents relating to Comenity's assignment of Plaintiff's account to MCM.[1] This is because: (1) Plaintiff's claims derive from Plaintiff's agreement with Comenity, and that agreement explicitly refers to assignees such as MCM; (2) the collection letter at issue and attached to Plaintiff's complaint refers to Comenity Bank as the original creditor and Midland/MCM as the current owner[2]; and (3) Plaintiff's proposed class concerns "[a]ll consumers with a New Jersey address that have received the same form letter as Exhibit A from Defendant MCM concerning debts for Comenity Bank

---

[1] On a motion to dismiss, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] The letterhead of the letter references Midland Credit Management, Inc. ("MCM") – the Defendant here – and the "current owner" is listed as Midland Funding LLC ("Midland"). MCM and Midland Funding LLC are wholly owned subsidiaries of Encore Capital Group, Inc. MCM is a servicer for Midland. MCM manages the debt and services accounts owned by Midland. (Docket No. 9-1 at 1.)

5

. . . ."

Moreover, although Plaintiff argues that the arbitration provision is not enforceable by MCM, Plaintiff does not dispute the existence of the agreement or its terms or that she is a party to that agreement, and she does not provide any additional facts to cast doubt on the agreement or the assignment of Plaintiff's account to MCM.  The Court may therefore consider whether the action must be arbitrated by way of a motion to dismiss.[3]

**C.  Analysis**

The Federal Arbitration Act (FAA) provides that a written arbitration provision contained in a "contract evidencing a

---

[3] Because the resolution of MCM's motion rests on a purely legal issue rather than one of disputed fact, and Plaintiff has not refuted that she signed the agreement containing the arbitration provision or questioned the validity of Comenity's assignment of Plaintiff's account to MCM or that her specific account was transferred, there would be no practical utility in ordering the parties to discovery, as all the relevant documents that need to be considered have already been produced.  See Doyle v. Ad Astra Recovery Services, Inc., 2018 WL 1169121, at *2 (D.N.J. 2018) (determining that the motion to dismiss standard applied because even though the plaintiff did not attach the agreement that contained the arbitration provision to the complaint, the plaintiff's claims derived from the agreement and the plaintiff did not argue that discovery was required to interpret the agreement); cf. Kennedy v. LVNV Funding LLC, 2019 WL 1789477, at *3 (D.N.J. 2019) (denying defendants' motion to dismiss without prejudice and ordering limited discovery on whether defendants succeeded in or were assigned Credit One's right to collect on Plaintiff's Debt under the Agreement, because the affidavit in support of Credit One's motion only stated, "[u]pon information and belief, the Debt was eventually assigned to Allied ... for collection purposes," and that single assertion in a declaration was insufficient to compel arbitration at that stage).

6

transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a private arbitration agreement is enforceable if (1) a valid arbitration agreement exists between the parties and (2) the dispute before it falls within the scope of the agreement. AT&T Mobility LLC v. Conception, 563 U.S. 333, 344–45 (2011); Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (before compelling arbitration pursuant to the FAA, a court must determine that "(1) there is a valid agreement to arbitrate between the parties and, if so, (2) [that] the merits-based dispute in question falls within the scope of that valid agreement").[4]

Additionally, arbitration agreements that contain waivers

---

[4] "' When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" Moon v. Breathless Inc., 868 F.3d 209, 213 (3d Cir. 2017) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). However, "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance," including whether a valid arbitration agreement exists between the parties, and the dispute before it falls within the scope of the agreement. Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 681 (2010) (citing 9 U.S.C. §§ 2-3) (other citations omitted). The agreement here provides that the agreement is governed by Delaware law and the arbitration provision is governed by the FAA.

7

of class actions are valid, AT&T Mobility LLC, 563 U.S. at 348,[5] and arbitration clauses have been upheld in putative FDCPA class action cases, see, e.g., Doyle v. Ad Astra Recovery Services, Inc., 2018 WL 1169121, at *2 (D.N.J. 2018); Gates v. Northland Group, Inc., 2017 WL 680258, at *1 (D.N.J. 2017); Harris v. Midland Credit Management, Inc., 2016 WL 475349, at *3 (D.N.J. 2016); Jeffreys v. Midland Credit Management, Inc., 2016 WL 4443164, at *1 (D.N.J. 2016). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000).

The Court's analysis of whether Plaintiff's claims must be arbitrated starts with the terms of the agreement. The agreement provides for a waiver of a jury trial and contains an arbitration provision in the event of a dispute, which will govern if the credit card holder does not reject the arbitration provision. (Docket No. 9-2 at 1.) The agreement also contains

---

[5] See also Kobren v. A-1 Limousine Inc., 2016 WL 6594075, at *4 (D.N.J. 2016) (explaining that "neither individual claims nor class arbitration waivers are unconscionable in the context of consumer adhesion contracts, even when there is a clear disparity of bargaining power and when only small monetary amounts are at issue") (citing Litman v. Cellco Partnership, 655 F.3d 225, 232 (3d Cir. 2011) (rejecting New Jersey law holding that waivers of class arbitration are unconscionable)); Edelist v. MBNA America Bank, 790 A.2d 1249 (Del. Super. 2001) (finding that the arbitration provision in a credit card agreement, which barred arbitration of disputes on class-wide basis, was not unconscionable, where surrender of class action right was clearly articulated).

a provision that arbitration waives the parties' right to a class action or class-wide arbitration. (Id. at 7.)

Plaintiff does not dispute that she did not reject the arbitration provision and that is it applicable to any dispute she would have with Comenity. (Docket No. 11 at 8.) Because Plaintiff disputes that the arbitration provision transferred to MCM, and that MCM is permitted to enforce the arbitration provision, the Court must consider the relevant provisions of the agreement relating to the transfer of rights under the agreement, as well as the documents that establish the transfer of Plaintiff's account and corresponding agreement to MCM.

The agreement provides: "We may transfer or assign your Account and/or this Agreement, or any of our rights under this Agreement, to another person or entity at any time without prior notice to you or your consent." (Docket No. 9-2 at 7.) Comenity sold to Midland Funding LLC ("Midland") Plaintiff's account, and the Bill of Sale provides, "[Comenity] hereby assigns effective as of the Closing Date of August 31, 2017 all rights, title and interest of [Comenity] in and to those Charged-off Accounts . . . for all purposes." (Docket No. 9-2 at 17.) Comenity informed Plaintiff of the sale of her account:

> As of Aug 02, 2017, your Express account, which was issued by and owned by Comenity Bank (Comenity), was closed and charged-off. Please refer to your final statement for the charge-off amount. We have sold the account to Midland

9

>    Funding, LLC.
>
>    As the new owner of the account, Midland Funding, LLC is entitled to pursue the collection activities and other legal remedies to collect the unpaid balances on your charged-off account, now due to Midland Funding, LLC. All future communications regarding this account will be initiated by Midland Funding, LLC and/or their collection servicers.

(Docket No. 9-2 at 23.) It is undisputable that one of Comenity's rights was the arbitration provision in Plaintiff's account agreement.

Acknowledging Comenity's right to arbitration, Plaintiff argues that the "Parties Subject to Arbitration" provision in the agreement does not encompass MCM – only Comenity or its affiliates. That provision provides, "Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms 'we,' 'us' and 'our' mean (a) Comenity Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party." (Docket No. 9-2 at 7.)

While Plaintiff's argument is literally true, Comenity sold all of its rights under the agreement to Midland. This caused Midland to substitute for Comenity in this provision, with MCM serving as Midland's affiliate. Thus, MCM is one of the

10

"Parties Subject to Arbitration." The failure of the "Parties Subject to Arbitration" provision to refer expressly to assignees is not a legal bar to an otherwise valid assignment. Plaintiff has cited no cases to that effect and the Court has found none.

Plaintiff further argues that her claims against MCM are not the type contemplated by the relationship she had with Comenity. Plaintiff argues that her claims against MCM are regarding a deceptive collections letter, while any claims Plaintiff would have against Comenity would arise out of her credit card account or the agreement itself.

This argument is not persuasive. Plaintiff does not show that her agreement with Comenity precluded any collection efforts by Comenity. To the contrary, the majority of the agreement relates to Plaintiff's obligations to pay for her transaction and the consequences of her failure to do so, which includes Comenity's right to "suspend your ability to make charges, close your Account, require you to pay the full amount you owe immediately or take any other action permitted by law," and require Plaintiff to "pay the reasonable costs for collecting amounts due, including reasonable attorney's fees and court costs incurred by us or another person or entity." (Docket No. 9-2 at 6, 7.) MCM, though Midland, assumed these rights when it purchased Plaintiff's account. MCM therefore

merely endeavored to collect on Plaintiff's account just as Comenity had the right to do before it sold her account.

Next, Plaintiff argues that MCM should be equitably estopped from enforcing the arbitration agreement. The Court is not persuaded, as the cases cited by Plaintiff concern third-party non-signatories' attempts to enforce arbitration provisions, such as a collection company hired by an account owner, rather than the situation here, where Comenity sold Plaintiff's account – and all the rights and obligations therein – to another party, which then stood in the same shoes as Comenity when Plaintiff signed the agreement.

Finally, Plaintiff argues that permitting MCM to enforce the arbitration provision would be unconscionable because it is overbroad and could be invoked for claims well outside the scope of a credit card agreement. Plaintiff presents the following example: "Hypothetically, Comenity Bank may reflect positively on Plaintiff's lengthy account history and offer him (sic) to become a shareholder in its stock for a designated price. Then, in the event Plaintiff accepts the offer and later learns of a securities fraud claim, that claim would theoretically also arise from the Account, thereby binding Plaintiff to arbitrate his (sic) securities dispute," which would lead to "an absurd result." (Docket No. 11 at 18.)

Perhaps Plaintiff's argument would be compelling if this

case concerned the type of claim suggested by Plaintiff and led to an absurd result. But it does not. Plaintiff's claims arise directly from her use of the credit card account. The invocation of an arbitration provision in this context is not unconscionable. See, e.g., Kobren v. A-1 Limousine Inc., 2016 WL 6594075, at *4 (D.N.J. 2016) (explaining that "neither individual claims nor class arbitration waivers are unconscionable in the context of consumer adhesion contracts, even when there is a clear disparity of bargaining power and when only small monetary amounts are at issue") (citing Litman v. Cellco Partnership, 655 F.3d 225, 232 (3d Cir. 2011) (rejecting New Jersey law holding that waivers of class arbitration are unconscionable)); Edelist v. MBNA America Bank, 790 A.2d 1249 (Del. Super. 2001) (finding that the arbitration provision in a credit card agreement, which barred arbitration of disputes on class-wide basis, was not unconscionable, where surrender of class action right was clearly articulated).

The enforcement of the arbitration provision does not eliminate Plaintiff's FDCPA claim against MCM - it simply changes the forum for its resolution and prevents her from pursuing a class action. American Exp. Co. v. Italian Colors Restaurant, 570 U.S. 228, 236 (2013) ("The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory

remedy than did federal law before its adoption of the class action for legal relief in 1938."). Plaintiff had options if she wished to preserve a potential FDCPA class action against any unlawful collection efforts arising from her credit card debt. Plaintiff had the option to reject the arbitration provision, the procedure for which was spelled out in bold lettering and large font in the agreement, or cancel the credit card. (Docket No. 9-2 at 7.) Plaintiff did not avail herself of these options, despite being informed, in even larger bold lettering at the top of the first page of the agreement, that:

> **Section I of this Agreement also includes a Jury Trial Waiver and an Arbitration Provision in the event of a dispute.**
> - **You have a right to reject this Arbitration Provision.**
> - **If you do not reject this Arbitration Provision, it will be part of this Agreement and will:**
>   o **Eliminate your right to a trial by jury; and**
>   o **Substantially affect your rights, including your right to bring, join in or participate in class proceedings.**

(Docket No. 9-2 at 1.)

The FAA established "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349 (2008); see also Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014) ("Courts generally apply a presumption in favor of enforcing arbitration clauses."). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."

14

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

After consideration of the presumption in favor of arbitration in tandem with Plaintiff's inability to meet her burden of proving that her claims are unsuitable for arbitration, Green Tree Financial Corp., 531 U.S. at 91, the Court finds that Plaintiff's complaint must be dismissed in favor of arbitration.[6]

**CONCLUSION**

For the reasons expressed above, Defendant's motion to dismiss Plaintiff's claims and to compel arbitration will be

---

[6] At least two other courts have come to the same conclusion in essentially identical circumstances. See George v. Midland Funding, LLC, 2019 WL 2591163, at *4 (D.N.J. June 25, 2019) ("[T]he Agreement broadly incorporates any claim related to the Agreement, including claims asserted against debt collectors or assignees like Defendants. The Agreement further contains a class action waiver and requires any questions related to arbitrability and the enforceability of the arbitration agreement must be resolved in arbitration. The Court is satisfied that there is a valid agreement to arbitrate and that it covers the claims alleged in the complaint."); Harris v. Midland Credit Management, Inc., 2016 WL 475349, at *2 (D.N.J. 2016) ("The clear language of the Agreement [] defines Credit One to include its successors and assigns. It also notes that claims subject to arbitration 'include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors.' Here, Midland Funding, LLC is a successor to Credit One. As such, Midland Funding stepped into the shoes of Credit One and is entitled to enforce the arbitration agreement. Defendant is Midland Funding's affiliate tasked with collecting on Plaintiff's delinquent account. Therefore, it is also entitled to enforce the arbitration agreement.").

15

granted.  The action will be dismissed.[7]  An appropriate Order will be entered.


Date:  July 25, 2019                    s/ Noel L. Hillman
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.

---

[7] The Court dismisses Plaintiff's claims, rather than stay them, because Plaintiff does not request that the Court stay the action pending the resolution of the arbitration process.  See Singh v. Uber Technologies Inc., 235 F. Supp. 3d 656, 676 (D.N.J. 2017) (quoting Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004)) ("The Third Circuit has held that the plain language of § 3 of the FAA 'affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.'  Because neither party requests a stay of the proceedings, the Court dismisses the case in favor of arbitration.").